# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL VANDERMOLEN, o/b/o ) <br> FRANCES M. CZARNECKI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 16 C 6836 <br><br> Magistrate Judge Finnegan |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Vandermolen ("Plaintiff"), on behalf of his now-deceased wife, Frances M. Czarnecki ("Czarnecki"), seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying Czarnecki's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 423, 1381(a). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the case should be reversed or remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record, the Court now grants the Commissioner's motion.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

Czarnecki applied for DIB and SSI in September 2009, alleging that she became disabled on August 1, 2007 due to arthritis, a heart condition, a fatty liver, back problems, and panic attacks. (R. 153-62, 179). Born on February 6, 1961, Czarnecki was 48 years old at the time of the applications, with a date last insured of September 30, 2010. (R. 691). She graduated from high school and lived with her husband until she passed away on September 29, 2015, due to cardiac arrest resulting from an apparent drug overdose. (R. 35, 705, 984). Between 1993 and August 2007, Czarnecki worked as a waitress for several restaurants, and also held brief jobs as a school bus aide (one month in late 2006) and a sales associate at a retail clothing store (3 months in early 2007). (R. 180). After the August 1, 2007 alleged disability onset date, Czarnecki worked part-time as a waitress and at another retail clothing store, but those jobs ended due to her physical limitations and constituted unsuccessful work attempts. (R. 36-38, 179, 691).

The Social Security Administration denied Czarnecki's applications at all levels of review, and she appealed to the district court, which affirmed the decision. (R. 70-78, 91-98); *Czarnecki v. Colvin*, No. 12 C 7996, 2014 WL 701260 (N.D. Ill. Feb. 24, 2014). On January 5, 2015, the Seventh Circuit reversed and remanded the case to the Commissioner for further proceedings, finding that Administrative Law Judge Karen Sayon (the "ALJ"): (1) failed to properly weigh the opinions from Czarnecki's treating psychiatrist, Brendan Beresford, M.D., and her treating internists, Nayeh Mirshed, M.D., and Win Myint, M.D.; and (2) erred in evaluating Czarnecki's statements regarding the limiting effects of her symptoms. (R. 827-38); *Czarnecki v. Colvin*, 595 F. App'x 635 (7th Cir. 2015). On September 3, 2015, the Appeals Council vacated the final decision of the

2

Commissioner and remanded the case to the ALJ "for further proceedings consistent with the order of the court." (R. 841). The ALJ was instructed to offer Czarnecki "the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision." (*Id.*).

The ALJ held a hearing on December 16, 2015, by which time Czarnecki was deceased. Her husband, now the named Plaintiff in the case, appeared with counsel and provided testimony along with vocational expert Clifford Brady. (R. 756-94). On March 3, 2016, the ALJ found that Czarnecki's degenerative joint disease of the lumbar spine, spinal stenosis, levorotoscoliosis of the thoracolumbar spine (abnormal leftward curvature of the upper and lower spine), chronic obstructive pulmonary disease, obesity, depression, anxiety, and history of substance abuse disorder were all severe impairments, but they did not meet or equal any Listed impairment. (R. 692-96).[2] After reviewing the medical evidence in detail, the ALJ concluded that Czarnecki was not disabled at any time prior to her death on September 29, 2015, because she retained the residual functional capacity ("RFC") to perform a significant number of light jobs available in the national economy with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional crouching, stooping, and climbing of ramps and stairs; and no concentrated exposure to hazards or respiratory irritants. Czarnecki was also restricted to work involving simple instructions; routine repetitive tasks; occasional decision making and changes in the workplace; and no fast-paced production requirements. (R. 697-713). The Appeals Council did not assume jurisdiction, 20 C.F.R. § 404.984, and Plaintiff now

---

[2] For reasons that are not clear, the record contains an earlier decision dated February 18, 2016, that appears to be identical to the March 3, 2016 decision. (R. 724-48).

seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) failed to follow the Seventh Circuit's findings with respect to Dr. Myint's opinion; (2) erred in weighing the other opinion evidence concerning Czarnecki's physical limitations; (3) erred in assessing Czarnecki's mental functional capacity; and (4) failed to properly evaluate the testimony regarding the limiting effects of Czarnecki's symptoms. For reasons discussed in this opinion, the Court finds that the ALJ did not make any errors and her decision is supported by substantial evidence.

## DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's final decision is authorized by Section 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner*, 478 F.3d at 841).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that she is disabled within the meaning of the Act. *Keener v. Astrue*, No. 06-CV-0928-MJR, 2008 WL 687132, at *1 (S.D. Ill. Mar. 10, 2008).[3] A person is disabled if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford v. Astrue*, 633 F. Supp. 2d 618, 630 (N.D. Ill. 2009). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§ 404.1520, 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

---

[3]    The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*, and are virtually identical to the SSI regulations set forth at 20 C.F.R. § 416.901 *et seq.*

**C.  Analysis**

    **1.  Dr. Myint's Opinions**

Plaintiff first objects to the ALJ's decision to give little weight to the opinions from Czarnecki's treating internist, Dr. Myint.  A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  An ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ.  20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

On March 15, 2010, Dr. Myint wrote a letter stating that Czarnecki had moderate to severe degenerative joint disease of the lumbar spine with levoscoliosis of the thoracolumbar spine and associated spinal stenosis.  He opined that Czarnecki could not sit, stand, or walk more than 10 minutes, lift more than 5 pounds, or "keep meaningful job."  (R. 393).  On July 21, 2010, Dr. Myint completed an Arthritis RFC Questionnaire indicating that Czarnecki could not: walk more than 1/2 a block without rest or severe pain; sit more than 20 to 30 minutes before needing to get up; stand more than 15 minutes before needing to sit down; or sit, stand and walk for even 2 hours in an 8-hour workday.

6

(R. 506). Dr. Myint further opined that Czarnecki needed to use a cane to stand/walk, could never lift even less than 10 pounds, and would be absent from work more than 4 days per month due to her impairments. (R. 507).

In the initial July 14, 2011 decision, the ALJ provided a single, short paragraph explaining why she gave Dr. Myint's opinions neither controlling nor great weight. (R. 21). The Seventh Circuit described the analysis as "conclusory" and stated that the ALJ "should not have rejected Dr. Myint's views because he was a treating physician whose opinions about Czarnecki's physical limitations were consistent with the other medical evidence." *Czarnecki*, 595 F. App'x, at 643. In reaching this conclusion, the court found Dr. Myint's views "consistent with his treatment records," and faulted the ALJ for selectively quoting from the progress notes from other physicians in finding that Czarnecki's pain was "relatively mild and tolerable until July 2010." *Id*. The court also determined that the ALJ had impermissibly "played doctor" by substituting her own opinion that Czarnecki did not really need to use a cane even though Dr. Myint had prescribed it to her. *Id*. at 644-45.

On remand, the ALJ once again afforded little weight to Dr. Myint's opinions, and Plaintiff argues that she provided the same flawed reasons that the Seventh Circuit already rejected on appeal. (Doc. 14, at 6-7). As an example, Plaintiff notes that the ALJ said Dr. Myint's opinions were "unsupported by his own treatment notes," (R. 702), but the Seventh Circuit previously determined that his "views [were] consistent with [those] notes." *Czarnecki*, 595 F. App'x, at 643. The ALJ also stated that Czarnecki's pain was well controlled on medication, but the Seventh Circuit previously concluded that the ALJ had failed to acknowledge that "progress notes from every other physician confirm that

7

Czarnecki had complained about severe back pain." *Id.* In Plaintiff's view, this violates the law of the case doctrine, which "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

As a preliminary matter, Plaintiff's argument ignores the fact that the court's overarching concern was that the ALJ failed to explain her findings and cherry-picked evidence. *Id.* ("[C]onclusory better describes the ALJ's analysis."). The ALJ's March 3, 2016 decision remedies those deficiencies with a lengthy, 12-page discussion of Czarnecki's entire medical record. (R. 699-710). The analysis concerning Dr. Myint in particular expanded from a single short paragraph to multiple pages. (R. 701-04). Nothing in the Seventh Circuit's decision required the ALJ to accept on remand that Dr. Myint's opinions were consistent with the record evidence and Czarnecki's complaints of pain. More importantly, the ALJ cited significant evidence on remand, some of which was not available to the appellate court, that contradicts Dr. Myint's findings.

With respect to Dr. Myint's treatment notes, the ALJ explained that while they recorded Czarnecki's diagnoses and complaints of pain, they did not include examination results or other documentation regarding her functional limitations. (R. 518-20, 702). The ALJ also observed that Dr. Myint's opinions seemed to be based on Czarnecki's pain at its worst, since she "actively sought the opinions on dates when increased symptoms were reported" and she was seeking disability paperwork. (R. 703). Plaintiff does not discuss these findings or raise any specific challenge to them.

8

Further supporting the ALJ's conclusion is the fact that, despite the degenerative nature of Czarnecki's impairment, records from October 2011 through August 2015 consistently recorded normal findings and evidence that she obtained good relief from epidural steroid injections and medication. On October 14, 2011, Czarnecki had normal musculoskeletal range of motion, normal strength, and no focal neurological deficits. (R. 1183). She also exhibited: normal range of motion, normal strength, no swelling, and only mild lower back tenderness despite walking with a cane on January 12, 2012 (R. 1210); full strength, intact sensation, and normal flexion and extension of the lumbar spine despite tenderness on December 28, 2012 (R. 1234); no changes on physical exam on March 15 and April 26, 2013, though Czarnecki received a prescription for a cane due to pain (R. 1243, 1254); no gait problems, negative straight leg raise test, intact sensation, and full strength despite tenderness and pain on range of motion on May 31, 2013 (R. 1080); 50% improvement in pain and "significant functional improvement" following an August 2013 epidural steroid injection (R. 1125); intact activities of daily living, no limitations with ambulation, no neurological symptoms, negative straight leg raise test, normal sensory exam, and only slight tenderness to palpation on November 7, 2013 (R. 1125-26); increased pain following a "Heavy w[ork]out" including use of a rowing machine in March 2014 (R. 1028); and report of 75% improvement from the August 2013 epidural steroid injection until April 14, 2015, when she suffered a "flare up . . . while rehabbing home with husband," with reduced range of motion but no appreciable trigger points. (R. 996-97). Plaintiff does not address any of these treatment notes or explain how they support Dr. Myint's opinions that Czarnecki could barely walk, sit, stand, or lift in 2010.

Plaintiff finally argues that the ALJ was bound by the Seventh Circuit's previous ruling that she had "impermissibly 'played doctor' by substituting her own opinion that a cane really wasn't necessary" for Czarnecki despite the fact that Dr. Myint had prescribed one for her. *Czarnecki*, 595 F. App'x at 644-45. This statement related to a discussion of Czarnecki's credibility as opposed to an analysis of the weight appropriately given to Dr. Myint's opinions. In addition, Dr. Myint did not give Czarnecki the prescription until July 2011, approximately a year after he provided his opinion regarding cane use in July 2010. (R. 682). Moreover, Dr. Myint's statement that Czarnecki needed a cane in 2010 conflicted with treatment notes from Czarnecki's other internist, Dr. Mirshed, who routinely observed her to have a normal gait and muscle strength from March 11 through September 9, 2010. (R. 546, 550, 553, 556, 559, 702).

In sum, the ALJ identified compelling reasons to reject Dr. Myint's opinions on remand, and that decision is supported by substantial evidence. Plaintiff's request for an immediate award of benefits based on the law of the case doctrine is denied.

## 2. Other Opinion Evidence

Plaintiff next objects to the ALJ's decision to give little weight to Dr. Mirshed's opinion that Czarnecki could not stoop, bend, or lift due to her lumbar stenosis from March through September 2010. (R. 701). In reaching this conclusion, the ALJ reasoned that the opinion was inconsistent with Dr. Mirshed's own treatment notes which showed normal muscle strength, normal gait, and no radiating pain on examination. (*Id.*). Plaintiff repeatedly insists that Dr. Mirshed only found normal gait and strength testing on one examination. (Doc. 14, at 9; Doc. 26, at 9). In fact, Dr. Mirshed affirmed these results at every exam throughout 2010. (R. 547, 551, 554, 557, 560). Plaintiff also disputes that

such findings are relevant to whether Czarnecki suffered from bending, stooping, and lifting restrictions. As discussed below, however, there are other medical professionals of record who disagree.

Dr. Mirshed and State agency examiner Norma Villanueva, M.D., both found that Czarnecki suffered from limited range of motion and tenderness in her back in 2010. (R. 436, 546, 550, 553, 556, 559). Dr. Mirshed made the observation generally (e.g., "decreased ROM with back flexion and extension"), while Dr. Villanueva provided specific readings: 45/90 degrees on flexion; 10/25 degrees on extension; and 10/25 degrees on lateral bending. (R. 436). State agency consultant George Andrews, M.D., reviewed Dr. Villanueva's detailed findings and concluded on March 8, 2010, that Czarnecki remained capable of occasionally lifting 20 pounds, and occasionally stooping, crouching, and climbing ramps and stairs. (R. 490). Glen Pittman, M.D., affirmed that decision upon review of additional record evidence through July 19, 2010, which included notes from Dr. Mirshed and Dr. Myint. (R. 620-21). The ALJ gave "considerable weight" to the State agency opinions because they were consistent with the objective evidence. (R. 701).

Plaintiff rejects this conclusion, stressing that "non-examining physicians' opinions, by themselves, are insufficient to summarily reject the examining physicians' opinions." *Czarnecki*, 595 F. App'x, at 644. The ALJ explained, however, that the consulting opinions were "grounded in the evidence in the case, including careful consideration of Dr. Villanueva's examination findings." (R. 701). In addition, Czarnecki's pain specialist confirmed in October 2010 that she had symmetric strength and deep tendon reflexes, negative straight leg raise test, negative Patrick/FABER tests, and normal coordination. (R. 636-37, 703). Subsequent reports routinely showed that Czarnecki exhibited normal

11

range of motion. (R. 703-05). Once again, Plaintiff completely ignores all of these records and provides no explanation for how they support Dr. Mirshed's extreme restrictions in 2010. As Plaintiff himself argues, Czarnecki's condition was degenerative, meaning that her symptoms would have been *worse* from 2011 through 2015 than they had been in 2010. (Doc. 26, at 6) (citing *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("The term 'degenerative' implies that Roddy suffers from a condition that will get worse over time, especially without proper treatment; it is not one that will remain stable or improve.")).

Viewing the record as a whole, the ALJ built a logical bridge between the medical evidence and her conclusion that Czarnecki was capable of occasional bending, stooping, and lifting of 20 pounds. The decision to reject Dr. Mirshed's opinion that Czarnecki could *never* bend, stoop, or lift any amount of weight is supported by substantial evidence, and Plaintiff's request to remand the case on that basis is denied.[4]

### 3. Czarnecki's Mental Functional Capacity

Plaintiff insists the case must still be remanded because the ALJ erred in weighing the opinions relating to Czarnecki's mental functional capacity. Czarnecki's treating psychiatrist, Dr. Beresford, completed a Mental Impairment Questionnaire on August 20, 2010, stating that he had treated Czarnecki every 1 to 3 months since June 2007. (R. 508). He diagnosed her with major depressive disorder, generalized anxiety disorder, and alcohol dependency in sustained remission, with signs and symptoms including: poor

---

[4] Plaintiff raises a concern that the ALJ "misunderstood" a January 18, 2011, treatment note from pain specialist Sajjad Murtaza, M.D. (Doc.14, at 11-12). In response to Czarnecki's question about driving, Dr. Murtaza said she should avoid heavy machinery but was otherwise "completely functional." (R. 631). The ALJ gave that opinion "moderate weight" and explained that she accounted for it in the RFC with a limitation to avoid concentrated exposure to hazards, including heavy machinery. (R. 703-04). The Court sees no error in this analysis.

12

memory; sleep and mood disturbance; emotional lability; recurrent panic attacks; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; and generalized persistent anxiety. (*Id.*). Though Czarnecki's medications helped "a little," they caused fatigue and poor concentration. (R. 508-09).

Dr. Beresford estimated that Czarnecki would be absent from work more than 3 times a month, and had poor or no ability to: maintain attention for 2-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and work week without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 509). In all other areas of functioning needed for unskilled work, Dr. Beresford rated Czarnecki's ability as "fair." (*Id.*). He opined that she had moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and constant deficiencies in concentration, persistence, or pace. (R. 511).

The ALJ gave Dr. Beresford's opinion little weight because it was inconsistent with his own treatment notes as well as other evidence in the record. By way of example, the ALJ observed that prior to completing the August 2010 Questionnaire, Dr. Beresford never mentioned medication side effects such as fatigue and poor concentration in his notes. (R. 709). The ALJ further explained that Dr. Beresford's opinion that Czarnecki had poor to no ability to maintain concentration or make even simple decisions conflicted with his June 7, 2007, initial assessment showing no issues with attention, concentration,

13

memory, problem solving, or insight. (R. 406, 709-10). The opinion also conflicted with Czarnecki's ability to take a computer class at her local library from March through June 2010, which required at least some concentration and public interaction.[5] (R. 709). Plaintiff does not point to any records showing a deterioration in attention, concentration, or insight prior to August 2010, or explain why the cited inconsistencies are insufficient to undermine Dr. Beresford's opinion.

The ALJ acknowledged that between June 2007 and August 2008, Czarnecki did suffer from ongoing depression, anxiety/panic, nervousness, stress, poor sleep, anhedonia, and lack of motivation. (Doc. 14, at 13 n.14) (citing R. 409-12, 509). She also noted, however, that Czarnecki showed improvement with medication compliance. (R. 710). Czarnecki's mood was stable in March 2010, and though she was stressed about her father's illness in subsequent months, she was "all OK" in April, and "doing OK" in July 2010. (R. 667-69, 708-09). She was also sleeping well in May 2011, and reported being able to both "multi-task" and "complete tasks." (R. 644, 709). When Czarnecki went to Stroger Hospital in January 2012, her depression was in partial remission. (R. 710, 1208). She next sought treatment in July 2013, at which time she told Samina Khattak, M.D., that she was in a good mood and sleeping well. Though she was anxious and feeling paranoid, her thought process was normal and she was cooperative. (R. 710, 1073-74).

On November 21, 2013, Czarnecki returned to Dr. Khattak in a good mood and remained cooperative with normal judgment. Dr. Khattak assessed her condition as

---

[5] Plaintiff incorrectly claims that the class only met "once or twice a week." (Doc. 14, at 12) (citing R. 59-60). The cited pages merely show that the class lasted 5 weeks and that Czarnecki took it twice (for a total of approximately 10 weeks) because it was hard for her to grasp. (R. 59-60).

14

moderate and improving. (R. 710, 1052-53). Throughout 2014, Czarnecki was calm, cooperative, able to make sensible decisions, and appropriate in social situations. Her judgment was normal and her thought process was appropriate. (R. 710, 1017, 1033-34, 1043). By January 2015, Czarnecki was anxious on exam with a variable mood, but Dr. Khattak noted that she was socially active, meeting friends, and getting along well with her husband. (R. 710, 1007-08). The ALJ reasonably concluded that these notes, which document Czarnecki's ability to take classes, socialize with friends, and relate adequately during examinations, conflict with Dr. Beresford's opinion that Czarnecki had constant deficiencies in concentration, persistence, or pace and marked difficulties with social functioning. (R. 710). Once again, Plaintiff ignores these records and fails to articulate how they support Dr. Beresford's opinion.

The ALJ's decision to credit the opinions from the State agency psychological consultants is similarly supported by substantial evidence. Donna Hudspeth, Psy.D., opined on March 4, 2010, that Czarnecki was moderately limited in the ability to understand, remember, and carry out detailed instructions, but was otherwise not significantly limited in any functional area. (R. 459-60, 708). Dr. Hudspeth concluded that Czarnecki could interact appropriately and communicate with a supervisor and fellow employees in the work setting, relate to the structure of a work routine, adapt to ordinary work changes, and make ordinary work decisions. She also had the processing skills to perform "at least two to three simple repetitive work tasks." (R. 461). Charles Wabner, M.D., affirmed these findings on July 22, 2010. (R. 620-21). In giving these opinions great weight, the ALJ explained that they were consistent with the longitudinal medical history, including a February 12, 2010, report from consultative examiner Nathan S.

Wagner, Psy.D. (R. 463, 708). Dr. Wagner stated that Czarnecki established a decent rapport with him, and had intact memory, adequate fund of information, fair abstract thinking, and adequate judgment and insight. Though she cried frequently when describing her symptoms, she could laugh at times and smile when the context was appropriate.[6] (R. 426, 707).

Plaintiff finds it significant that the ALJ rejected the limitation to "two to three steps." (Doc. 14, at 14; Doc. 26, at 13). Of course, "there is no requirement that an ALJ accept every opinion within a given report." *Gleason v. Colvin*, No. 13 C 1378, 2015 WL 3454126, at *20 (E.D. Wis. May 29, 2015) (citing SSR 96-5p, 1996 WL 374183, at *4) ("Adjudicators must remember . . . that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, . . . and that it may be necessary to decide whether to adopt or not adopt each one."). Plaintiff argues that the ALJ's reason for rejecting the limitation (vagueness) was flawed because she did not contact the State agency physicians for clarification. "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Plaintiff does not claim that the record was inadequate to determine whether Czarnecki was disabled, and his request for remand on this basis is denied.

Plaintiff finally argues that the ALJ erred in discounting Dr. Beresford's opinion because he was unaware of Czarnecki's difficulties with alcohol and occasional lapses in her sobriety. (Doc. 14, at 12). The Court agrees that Dr. Beresford's treatment notes

---

[6] Plaintiff incorrectly claims that the ALJ discredited Dr. Wagner's opinion based on the testimony he provided about his wife during the second administrative hearing. (Doc. 14, at 14). The ALJ made clear, however, that she viewed the testimony as undermining Czarnecki's complaints. (R. 707).

16

fairly indicate that he was cognizant of these issues. Nevertheless, the ALJ has articulated several valid reasons for rejecting Dr. Beresford's extreme mental restrictions, including their inconsistency with the longitudinal record, and the Court sees no reason to remand the case for further analysis of this issue. *See Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same.").

To summarize, substantial evidence supports the ALJ's decision in weighing the opinions regarding Czarnecki's mental abilities. The Commissioner's motion for summary judgment is therefore granted.

### 4.  Credibility

Plaintiff argues that the ALJ still committed reversible error in evaluating Czarnecki's statements regarding the limiting effects of her symptoms. In assessing a claimant's credibility, an ALJ must first determine whether the symptoms are supported by medical evidence. *See* SSR 96-7p, at *2; *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record."[7]  *Arnold*, 473 F.3d at 822. *See also* 20 C.F.R. § 404.1529; *Carradine v. Barnhart*, 360 F.3d 751, 775 (7th Cir. 2004). Because hearing officers are in the best position to evaluate a witness's credibility, their

---

[7]  SSR 16-3p does not apply to this appeal since the ALJ's decision is dated February 27, 2015. *See* 82 FR 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017) (clarifying that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016.").

17

assessment should be reversed only if "patently wrong." *Castile*, 617 F.3d at 929; *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ provided several reasons for concluding that Czarnecki was not as limited as she claimed. (R. 698). As discussed above, Czarnecki's allegations were inconsistent with her longitudinal medical record which showed normal neurological findings, negative straight leg raise tests, and full spinal range of motion on several occasions. (R. 710-11). Czarnecki had good results from a November 2013 epidural steroid injection and received 75% relief until April 2015. (R. 711). Her mental condition also improved with medication compliance. (R. 710).

Further detracting from Czarnecki's credibility was the fact that she was dishonest with one of her doctors. In November 2008, she told John Zielinski, M.D., that she had been sober since June 2006, even though she was treated at an emergency room in January 2008 for alcohol abuse and reported at that time that she normally consumed alcohol every day. (R. 282, 444, 699). In addition, Czarnecki tried her husband's Norco because the Vicodin prescribed for her bothered her stomach, and may have taken Soma tablets (not prescribed) at the time of her cardiac arrest in September 2015, resulting in "a likely polypharmacy overdose." The ALJ deemed such medication use as adding to "the implication of non-compliance." (R. 703, 705, 710). Notably, Czarnecki's pain specialist admonished her in October 2010 for "going to multiple doctors and getting overlapping prescriptions for hydrocodone." (R. 636, 703).

With respect to Czarnecki's mental condition, the ALJ found it significant that her husband never saw any signs of depression in his wife aside from her telling him that she missed him when he was at work, and only observed panic attacks "once or twice." (R.

707, 773-74). Plaintiff also testified that his wife "always talked to her friends . . . If she needed to talk to somebody there was always someone there for her." (R. 773). As the ALJ observed, this evidence "detracts from [Czarnecki's] allegations as to the severity of her symptoms," including social withdrawal. (R. 707). Even assuming Czarnecki hid the symptoms from her husband, her ability to "control the outward manifestations of her emotions around her husband suggests an ability to function around others." (*Id.*). The ALJ reasonably credited Plaintiff's testimony on this issue, and rejected statements that conflicted with the other evidence of record discussed above. *Cf. Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (ALJ "should have made clear whether he believed the fiancée's testimony or not, or which part he believed.").

Plaintiff finally argues that the ALJ erred in considering evidence that Czarnecki was helping to rehab her house. (Doc. 14, at 15). The Seventh Circuit posited that Czarnecki may have done nothing more than hold up a paintbrush, but the ALJ found that the "medical records (often documenting full lumbar and cervical range of motion, normal gait, negative straight leg raise, and normal neurological findings) clearly do not support such limited ability." (R. 711). As the ALJ explained, Czarnecki reported climbing ladders (and falling) on at least two occasions in 2008, (R. 374, 415), and complained in February 2011 that her pain had returned following an epidural steroid injection because she had been "helping to remodel her home." (R. 628). On April 14, 2015, moreover, Czarnecki experienced a flare up of pain for the first time since September 2013 after "rehabbing home with husband." (R. 996). The ALJ fairly concluded that these activities undermined Czarnecki's claims of disabling limitations, and in no way suggested that her pain could simply be "read off" from a medical chart. (Doc. 14, at 15) (citing *Martinez v. Astrue*, 630

F.3d 693, 697 (7th Cir. 2011) ("The etiology of pain is not so well understood . . . that the severity of pain experienced by a given individual can be 'read off' from a medical report.").[8]

Viewing the record as a whole, the ALJ has provided several valid reasons for discrediting Czarnecki's statements regarding the severity of her symptoms, and that decision is not "patently wrong." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (an ALJ's credibility determination "will stand as long as [there is] some support in the record.").

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for remand is denied, and the Commissioner's Motion for Summary Judgment [24] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: January 23, 2018

_Sheila Finnegan_
SHEILA FINNEGAN
United States Magistrate Judge

---

[8] The Court gives no weight to Plaintiff's undeveloped assertion that the ALJ drew negative inferences based on the frequency of Czarnecki's treatment. (Doc. 14, at 15). As the Seventh Circuit has made clear, "perfunctory and undeveloped arguments . . . are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

20